UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

VLADIMIR TIMKO,

                Plaintiff,

    -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, DETECTIVE
MARK HOLDER, LIEUTENANT FRANKIE
RIVERA, DETECTIVE STEVEN HOM,
POLICE OFFICER ERIC LUGO, POLICE
OFFICER ANGEL TAVERES, POLICE
OFFICER JOHN MAZZELLA, POLICE
OFFICER THOMAS CARTER,

                Defendants.

------------------------------------------------------------x

ECF Case

08 Civ. 137 (NG)(SMG)

**AMENDED COMPLAINT**

Plaintiff Demands A
Trial By Jury

Plaintiff Vladimir Timko, by his attorneys Kahn Gordon Timko & Rodriques, P.C., as and for his Amended Complaint against Defendants, alleges as follows:

### THE PARTIES

1. Plaintiff Vladimir Timko is a natural person who resides at 102 Bay Ridge Avenue, Brooklyn, New York.

2. Upon information and belief, Defendant City of New York (hereinafter "NYC") was and still is a municipal corporation organized and existing under and by virtue of the laws of the State of New York.

3. Upon information and belief, Defendant New York City Police Department (hereinafter "NYPD") was and still is an agency of NYC and subject to its control.

4. Upon information and belief, Defendant Detective Mark Holder (hereinafter

"Det. Holder"), Shield No. 4311 was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was assigned to Narcotics Borough Brooklyn South Task Force.

5. Upon information and belief, Defendant Lieutenant Frankie Rivera (hereinafter "Lt. Rivera") was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was a Sergeant, Shield No. 4276, was assigned to the Narcotics Borough Brooklyn South Task Force.

6. Upon information and belief, Defendant Detective Steven Hom (hereinafter "Det. Hom"), Shield No. 4337, was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was assigned to the Narcotic Borough Brooklyn South Task Force.

7. Upon information and belief, Defendant Police Officer Eric Lugo (hereinafter "P.O. Lugo"), Shield No. 2061, was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was assigned to the Narcotics Borough Brooklyn South Task Force.

8. Upon information and belief, Defendant Police Officer Angel Taveres (hereinafter "P.O. Taveres"), Shield No. 9025, was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was assigned to the Narcotics Borough Brooklyn South Task Force.

9. Upon information and belief, Defendant Police Officer John Mazzella (hereinafter "P.O. Mazzella"), Shield No. 4869, was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was assigned to the Narcotics Borough Brooklyn South Task Force.

10. Upon information and belief, Defendant Police Officer Thomas Carter (hereinafter "P.O. Carter"), Shield No. 30518, was and is a duly appointed and acting officer of NYPD, who on the date of the incident in question was assigned to the Narcotics Borough Brooklyn South Task Force.

11. Upon information and belief, at all times hereinafter mentioned, Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter were acting under color of law, to wit: under color of the statutes, ordinances, regulations, policies, customs and practices of NYC, NYPD and/or the State of New York.

## JURISDICTION AND VENUE

12. Plaintiff brings this suit for violation of his civil rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States and it is an action to redress violation of Plaintiff's civil rights.

13. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over claims in this action with respect to violation of the laws of the State of New York because such claims are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy.

14. Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. §§ 1391(a)(1) and (a)(2) because it is the judicial district in which the events or omissions giving rise to Plaintiff's claim occurred.

15. On or about April 18, 2007, which was within ninety (90) days after the claim herein arose, Plaintiff caused a Notice of Claim, in writing, sworn to and verified, to be

served upon NYC and NYPD.

16. At least thirty (30) days have elapsed prior to the commencement of this action since the claim was presented to NYC and NYPD for adjustment and NYC and NYPD have refused adjustment or payment.

17. This action was timely commenced pursuant to Section 50-i(1) of the General Municipal Law of the State of New York.

18. Defendants have failed to request a hearing of the Plaintiff, pursuant to Section 50-h of the General Municipal Law, and has waived same.

19. Plaintiff has, in all respects, complied with all of the statutory prerequisites for the commencement and prosecution of this action.

### The Facts

20. Upon information and belief, at all times hereinafter mentioned, as a member of the NYPD, Defendants Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter were agents, employees and/or servants of NYC and were acting within the scope of their employment and authority as New York City Detectives, a New York City Police Sergeant and New York Police Officers.

21. On February 8, 2007, on the 4:00 P.M. to Midnight Tour, Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter were engaged in the execution of a "Tactical Plan" resulting from a "recent shooting", "activity @ Pct. Narcotics Locations" and "seatbelt usage" in the 68/72 Precincts in Brooklyn, New York.

22. On February 8, 2007, on the 4:00 P.M. to Midnight Tour, Lt. Rivera (then Sgt. Rivera) was the "Team Leader" of the Tactical Plan.

23. On February 8, 2007, on the 4:00 P.M. to Midnight Tour. Det. Holder was the

designated "Arresting Officer" of the Tactical Plan.

24. On February 8, 2007, on the 4:00 P.M. to Midnight Tour, Lt. Rivera and Det. Holder were assigned to a Black Buick while engaged in the execution of the Tactical Plan.

25. On February 8, 2007, on the 4:00 P.M. to Midnight Tour, Det. Hom, P.O. Mazzella and P.O. Carter were assigned as "Chase #1" in a Gray Pontiac while engaged in the execution of the Tactical Plan.

26. On February 8, 2007, on the 4:00 P.M. to Midnight Tour, P.O. Lugo and P.O. Taveres were assigned to the "Prisoner Van", a Blue Ford, while engaged in the execution of the Tactical Plan.

27. On February 8, 2007, at approximately 6:45 P.M., Plaintiff was a passenger in a Black Nissan Pathfinder that was owned and operated by John Jadallah, that was stopped at a traffic light on 4th Avenue, at or near its intersection with 66th Street, Brooklyn, New York, County of Kings.

28. Upon information and belief, Det. Holder and Lt. Rivera were operating the Black Buick on the same date and time and stopped their vehicle behind the vehicle in which the Plaintiff was a passenger.

29. Upon information and belief, Det. Holder and Lt. Rivera exited their vehicle, approached the vehicle in which the Plaintiff was a passenger and ordered Plaintiff and Mr. Jadallah out of the Pathfinder, whereupon the Police Officers physically searched Plaintiff and Jadallah and Jadallah's Pathfinder.

30. Prior to and at the time of the incident, Plaintiff was diagnosed with epilepsy and takes prescription medication to prevent recurrence of the symptoms and seizures associated with his disease. Plaintiff carries the daily doses of his prescribed medications in

a small container that he keeps in his pocket.

31. Upon information and belief, Lt. Rivera searched Plaintiff and discovered the container that contained Plaintiff's prescribed medications and Plaintiff informed him that the medication was prescribed by a licensed physician for his epilepsy and it was more convenient to carry around the daily doses in a small container than in the large containers from the pharmacy, both because of the size of the containers and the expense of the medications.

32. The search of the Pathfinder revealed no contraband or evidence of a crime and the search of Jadallah uncovered a miniature NYPD Badge which, Jadallah explained, was given to him by a Police Officer with whom he was acquainted.

33. Det. Holder and Lt. Rivera then directed Plaintiff and Jadallah to leave, but the keys for the Pathfinder could not be located, whereupon Jadallah exited the vehicle to ask Det. Holder and Lt. Rivera if they had seen the keys or retained them by mistake, and Plaintiff and Jadallah were handcuffed and placed under arrest.

34. Notwithstanding that the location of the incident was approximately one block away from the 68th Precinct, Det. Holder and Lt. Rivera radioed for the "Prisoner Van", being operated by P.O. Lugo and P.O. Taveres to pick up Plaintiff and Jadallah.

35. Rather than transporting Plaintiff and Jadallah to that or any other Precinct, P.O. Lugo and P.O. Taveres proceeded to drive them around the neighborhood for in excess of three hours, not arriving at the 68th Precinct until approximately 10:00 P.M.

36. When Plaintiff and Jadallah asked P.O. Lugo and/or P.O. Taveres why they had been arrested, he refused to tell them. P.O. Lugo and/or P.O. Taveres also refused their request to loosen their handcuffs.

37. Eventually, Plaintiff and Jadallah were taken to the 68th Precinct where they were strip-searched and cavity searched by P.O. Lugo and/or one of the other defendants, photographed, fingerprinted and put in a cell and no one would inform them of the charges against them.

38. Plaintiff advised Det. Hom that he was an epileptic and that the pills had been prescribed to prevent the symptoms and seizures associated with his epilepsy, but Det. Hom would not allow Plaintiff to take his medication and told him that if he "had a fucking seizure, they would call an ambulance and take him to the fucking hospital".

39. Plaintiff was permitted to call his attorney, Nicholas I. Timko, Esq., who appeared at the 68th Precinct as attorney for Plaintiff and Jadallah, but Det. Hom would not inform him of the charges against Plaintiff and Jadallah and initially refused him the right to speak with Plaintiff and Jadallah and then refused to allow him to speak with Plaintiff and Jadallah in private. and refused to allow Plaintiff to take his medications.
with Plaintiff's actual prescription bottles

40. Mr Timko also brought the bottles with the prescription labels for Plaintiff's epilepsy medications and showed them to Det. Hom and provided Det. Hom with the telephone number of the prescribing physician, but Det. Hom still would not permit Plaintiff to take his medications and refused to release Plaintiff and Jadallah.

41. Plaintiff and Jadallah were then taken to Central Booking where they were processed and placed in a cell.

42. Approximately twenty-fours hours after first being detained by NYPD, Plaintiff and Jadallah were released.

43. No charges of any type were ever brought against Plaintiff and at no time

during his confinement was he informed of the charges that led to his detention and confinement.

44. The New York City Civilian Complaint Review Board (hereinafter "CCRB") determined that Det. Holder abused his authority when he stopped the car in which Plaintiff and Jadallah were occupants on February 8, 2007 at 65th Street and 4th Avenue, Brooklyn, New York.

45. The CCRB also determined that Det. Holder had no probable cause, reasonable suspicion of criminal activity or any other legal basis to justify the stop the car in which Plaintiff was an occupant.

46. The CCRB recommended that NYPD discipline Det. Holder as a result of the incident and, upon information and belief, the matter has been referred to the Department Advocate's Office for further action.

47. The CCRB did not make any determination with respect to Lt. Rivera and the "stop".

48. It is undisputed that Lt. Rivera was partnered with Det. Holder and participated in the "stop" of Plaintiff and John Jadallah.

49. There was no probable cause, or reasonable suspicion of criminal activity or any other legal basis for the "stop" of Plaintiff and John Jadallah by Det. Holder.

50. There was no probable cause, or reasonable suspicion of criminal activity or any other legal basis for the "stop" of Plaintiff and John Jadallah by Lt. Rivera.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR ASSAULT AND BATTERY

51. Plaintiff repeats and realleges Paragraphs "1" through "50" as if fully set

forth.

52. By handcuffing Plaintiff too tightly and refusing to loosen the handcuffs upon Plaintiff's request, defendants assaulted and battered Plaintiff causing him to sustain serious and permanent personal injuries.

53. The assault and battery were without probable cause or justification.

54. At the time of the assault and battery upon Plaintiff, the defendants were acting within the scope of their employment and under color of law.

55. The defendants' assault and battery upon Plaintiff was intentional and/or reckless, negligent and careless in that they did not stop or refrain from using excessive physical force upon the Plaintiff.

56. Along with the serious permanent personal injuries, Plaintiff sustained humiliation, shame, indignity and emotional and physical distress and injury all to his damage in the sum of Ten Million Dollars.

57. The assault and battering of Plaintiff was wanton, willful and malicious and Plaintiff is entitled to an award of punitive damages in an amount to be determined upon the trial of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR FALSE ARREST AND FALSE IMPRISONMENT

58. Plaintiff repeats and realleges Paragraphs "1" through "57" as if fully set forth..

59. Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter stopped, searched, detained and photographed, fingerprinted and confined Plaintiff without probable cause or reasonable suspicion that he had committed any crime

and with actual malice once they were presented with incontrovertible evidence that the pills Plaintiff had on his person were prescribed to control his epilepsy.

60. Plaintiff was conscious of all of the above and did not consent to same.

61. The false arrest and imprisonment of the Plaintiff had no basis in fact or law and was not otherwise privileged.

62. At the time of the false arrest and false imprisonment of the Plaintiff, the defendants were acting within the scope of their employment and under color of law.

63. As a result of the false arrest and false imprisonment of the Plaintiff by defendants, Plaintiff sustained humiliation, shame, indignity and emotional and physical distress and injury all to his damage in the sum of Ten Million Dollars.

64. The false arrest and false imprisonment of Plaintiff was wanton, willful and malicious and Plaintiff is entitled to an award of punitive damages in an amount to be determined upon the trial of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR VIOLATION OF 42 U.S.C. § 1983

65. Plaintiff repeats and realleges Paragraphs "1" through "64" as if fully set forth..

66. The defendants, acting under color of law and within the scope of their authority, assaulted and battered the Plaintiff in violation of 42 U.S.C. § 1983.

67. The assault and battering of Plaintiff by the defendants when Plaintiff was unarmed, did not pose a threat of grievous bodily injury to the defendants or others, was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the Constitutional and statutory civil rights of the Plaintiff.

68. The false arrest and false imprisonment of Plaintiff by defendants without probable cause, reasonable suspicion of criminal activity, or any other legal basis deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1983.

69. The false arrest and false imprisonment of Plaintiff by defendants without probable cause, reasonable suspicion of criminal activity, or any other legal basis, was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the Constitutional and statutory civil rights of the Plaintiff.

70. The denial by defendants of plaintiff's right to consult with his attorney, Nicholas I. Timko, Esq., and to consult with his attorney privately, deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1983.

71. The denial by defendants of plaintiff's right to consult with his attorney, Nicholas I. Timko, Esq., and to consult with his attorney privately, was done with actual malice toward Plaintiff and with willful and wanton indifference to and deliberate disregard for the Constitutional and statutory civil rights of the Plaintiff.

72. The deprivation by defendants of Plaintiff's civil rights was a result of defendants acting under color of law and within their authority as a law enforcement officer within the employ of NYC and NYPD.

73. The defendants' actions were not privileged or immune when they assaulted, battered, falsely arrested and falsely imprisoned the Plaintiff and denied him his right to counsel.

74. As a result of the violation of Plaintiff's rights under 42 U.S.C. § 1983, he has been damaged in the sum of Ten Million Dollars.

75. The violation of Plaintiff's civil rights by defendants was wanton willful and

malicious and Plaintiff is entitled to an award of punitive damages in an amount to be determined upon the trial of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR NEGLIGENT HIRING, TRAINING AND RETENTION

76.  Plaintiff repeats and realleges Paragraphs "1" through "75" as if fully set forth..

77.  Defendant NYPD was responsible for hiring and training police officers, including the defendants herein, who are competent and capable of properly carrying out their jobs without causing injury to persons, including Plaintiff herein.

78.  Defendant NYPD was negligent, reckless and careless in the hiring, training and retention of Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter..

79.  NYPD negligently recklessly and carelessly failed to investigate and determine whether Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter were capable and competent to carry out their jobs without causing injury to persons and violating person's civil rights, including the Plaintiff herein.

80.  Upon information and belief, prior to the incident at issue in this action, the defendants had exhibited behavior indicating that they were unable to perform their duties in a capable and competent manner.

81.  As a result of the negligence, recklessness and carelessness of NYPD in the hiring, training and retention of Det. Holder, Lt. Rivera, Det. Hom, P.O. Lugo, P.O. Taveres, P.O. Mazzella and P.O. Carter, Plaintiff was caused to sustain serious personal injury, emotional anguish and deprivation of his civil rights and has been damaged in the amount

of Ten Million Dollars.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR VIOLATION OF CIVIL RIGHTS

82. Plaintiff repeats and realleges Paragraphs "1" through "81" as if fully set forth..

83. Prior to February 8, 2007, NYC and NYPD permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal stops, searches, seizures, arrests, deprivation of right to counsel and use of unreasonable and excessive force by officers of NYPD.

84. Although such conduct was improper, the officer involved were not disciplined, restrained or prosecuted.

85. As a result, officers of NYPD were caused and encouraged to believe that the unlawful stops, searches, seizures, arrests, depriving the suspects of the right to counsel and the use of excessive force would be permitted and tolerated by NYC and NYPD.

86. In addition to permitting a pattern and practice of illegal stops, searches, seizures, arrests, deprivation of the right to counsel and improper and excessive use of force, NYC and NYPD have failed to maintain a proper system for the investigation of allegations and incidents of such illegal arrests, denials of right to counsel and excessive force.

87. Upon information and belief, systemic flaws included, but are not limited to, failing to credit testimony of non-police officer witnesses and uncritically relying on reports prepared by police officers involved in the incident.

88. The foregoing acts, omissions, systemic flaws, policies and customs of NYC and NYPD caused their police officers to believe that illegal stops, searches, seizures, arrests,

depriving suspects of their right to counsel, and the use of excessive force would not be aggressively, honestly and properly investigated, with the foreseeable result that police officers would be more likely to engage in such behavior.

89. As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies and customs of NYC and NYPD, Defendants violated Plaintiff's civil rights.

90. As a result of the above, Plaintiff was caused to suffer serious personal injuries all to his damage in the amount of Ten Million Dollars.

91. The violation of Plaintiff's civil rights by defendants was wanton willful and malicious and Plaintiff is entitled to an award of punitive damages in an amount to be determined upon the trial of this action.

WHEREFORE, Plaintiff demands judgment against defendants, who are jointly and severally liable, in the sum of Ten Million Dollars on each of the FIRST through FIFTH causes of action, punitive damages in an amount to be determined upon the trial of this action on each of the FIRST, SECOND, THIRD, and FIFTH causes of action, reasonable attorneys fees pursuant to 42 U.S.C. § 1988(b), the costs and disbursements of this action and such other and further relief as this Court deems to be just and proper.

Dated: New York, New York
       September 23, 2008

Kahn Gordon Timko & Rodriques, P.C.

By:_____
Lester C. Rodriques (LCR 4123)
Attorneys for Plaintiff
20 Vesey Street - 3rd Floor
New York, New York 10007
(212) 233-2040